**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DARLA PADLO,

        Plaintiff,                     Case Number: 04-CV-74986

v.                                            JUDGE PAUL D. BORMAN
                                                 UNITED STATES DISTRICT COURT
VG'S FOOD CENTER, INC. d/b/a VG'S
FOOD CENTER AND PHARMACY, a
Michigan corporation; CHERYL BIGHAM,
MICHAEL FLOETER, LISA BAY, DEEANN
OSWALD-DEBOTTIS, in their individual and
official capacities,

        Defendants.
_____ /

**OPINION AND ORDER GRANTING DEFENDANT OSWALD-DEBOTTIS' MOTION
FOR SUMMARY JUDGMENT ON ALL OF PLAINTIFF'S CLAIMS**

Now before the Court is Defendant Deeann Oswald-DeBottis' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56(c), which motion was filed on March 14, 2005. The Court heard oral argument on July 6, 2005. Having considered the entire record, and for the reasons that follow, the Court GRANTS Defendant Oswald-DeBottis' motion for summary judgment on all of Plaintiff's claims.

**I. BACKGROUND**

On January 15, 2003, Cheryl Bigham ("Bigham"), a manager for VG's Food Center, Inc. d/b/a VG's Food Center and Pharmacy ("VG") at its store in Howell, Michigan, reported that she was detaining two young females, Darla Padlo ("Plaintiff") and Cassandra Green ("Green"), at the store for attempted theft. (Br. at 1; DeBottis' Report at 1, Ex A.) Deeann Oswald-DeBottis

("DeBottis"), a trooper with the Michigan State Police, was dispatched to VG's store. (Br. at 1.)

Upon arriving at the store, DeBottis interviewed employees Michael Floeter ("Floeter"), Lisa Bay ("Bay"), and Bigham. (Br. at 1.) Floeter told DeBottis that he observed Plaintiff and Green "hanging around" the cosmetics' section, "looking suspiciously around them." (DeBottis Report at 3.) According to Floeter, he observed "at least one of the two girls . . . place[] something in her pocket." (DeBottis Report at 3; Br. at 6.) Floeter stated that Plaintiff and Green stopped in another aisle and "began unwrapping the items" and that, during this time, he contacted Bay to assist him in observing the girls. (DeBottis Report at 3.) Floeter stated that, as the girls exited the aisle, he seized several wrappers that they had shoved behind displayed products. (DeBottis Report at 3; Br. at 6.) During her interview, Bay told DeBottis that, although she did not see Plaintiff or Green initially take any items, she later observed Plaintiff attempt to shield Green as Green unwrapped and concealed the items. (DeBottis Report at 3; Br. at 6.)

Bigham informed DeBottis that she confronted Plaintiff and Green after Floeter observed them remove several cosmetic items from the shelves and place them into their pockets, and that she did not personally observe any items being stolen. (DeBottis Report at 2, Ex. A.) Bigham advised DeBottis that, upon being confronted, Plaintiff and Green immediately began to cry, and Green took a couple of the items out of her pockets. (DeBottis Report at 2; Br. at 6-7.) Indeed, all of the items came from Green's clothing pockets. (DeBottis Report at 5.)

After taking the employees' statements, DeBottis arrested both Plaintiff and Green for retail fraud. (Br. at 2; DeBottis Report at 3.) According to DeBottis, she arrested Plaintiff for aiding and abetting Green's retail fraud. (Reply at 3.) Of special note, Plaintiff did not advise

2

any of VG's employees that Green was shoplifting. (Br. at 3.)

After being transported to the police station, where DeBottis advised them of their *Miranda* rights, Plaintiff and Green gave written statements to DeBottis. (Br. at 2.) In her statement, Green wrote, in pertinent part:

> We were walking around and she needed things for her house but was to [sic] scard [sic] to do it, so I said I would, we grabed [sic] lotion, toothpaste, shavers, 3 chaped [sic] sticks and that was all.

(Green Statement, Ex. 1) According to DeBottis' report, Green told DeBottis that she was the one who had attempted to steal the items. (DeBottis Report at 5.) Green told DeBottis that, when Plaintiff stated that she needed certain items but "didn't have enough money," Green told Plaintiff that Green would steal them and, "if they got caught, she would just say that she was the one who took everything." (*Id.*) Green told DeBottis that Green would ask Plaintiff, if they needed a particular item, and that she would take it if Plaintiff said yes. (*Id.*) According to Green, she told Plaintiff to stop acting so obvious, and asked Plaintiff to help by standing in a certain spot while Green unwrapped items and placed them in her pocket, and that Plaintiff did so. (*Id.*) Green told DeBottis that, if caught, she expected to receive only a warning. (*Id.* at 6.)

In her statement, Plaintiff wrote:

> We went right to the isle [sic] where there is lotion we put lotion on our hands. Then Cassie asked me if I needed lotion for my face I said 'yes, but not right now because I don't have any money' Then, she said well what if I stole it for you. I then said 'no way what if we get caught.' She said that wont [sic] happen I promise, I swear if we get caught I will take the blame for everything I promise then I said no again an [sic] she took it and put it into her pocket . . . . Then we walked away from that isle [sic], and she asked me if we need shavers. Then I said 'yes' but not now because I have no money then again she said 'I could steal it' I said no. That's way too obvious. Then she grabbed it and walked further and grabbed chapt [sic] sticks for herself and tooth paste . . . . Then she started to open the stuff she grabbed. She told me to help her. But I refuse [sic] because I was scared so I said no Then she said grab this wrapper from me. I did, then gave it

> back to her cuz I got scared. Then she told me to move a candle and she then stuffed it behind. . . . Then I folled [sic] her as she walked towards the front of the building. Then she again asked me 'is it noticeable' I looked and said no but I know we will get caught because of the way we are both acting. . . . And we went through the check-out line and bought my candle. We walked close to the door and the Assistant Store Manager approached us and told us that there was [an] empty shaver box that was found by one of her employees and then Cassie looked at me . . . . Cassie told the lady that she did take that and a few other things from the store as well. We began to cry and we told the lady that [it] would never happen again. But she had already called 911 . . . .

(Pl. Statement, Ex. 2) According to DeBottis' report, Plaintiff told DeBottis that Green, rather than Plaintiff, stole the items; that Green told Plaintiff that she was going to steal the items; and that, after Plaintiff told Green not to do so, Green told Plaintiff that "everybody does it, and doesn't get caught" and that, if they did get caught, the store would let them go with a warning since it was their first time. (DeBottis Report at 4.) Plaintiff told DeBottis that, although she knew that stealing was wrong, she stayed with Green as Green took items out of their packages and put them into her pockets. (*Id.*) Plaintiff told DeBottis that, when Plaintiff started pacing with anxiety, Green told her to stop acting so obvious or they would get caught and, thereafter, Plaintiff tried to act more casual while standing next to Green. (*Id.*) Plaintiff told DeBottis that, if caught, she expected to receive only a warning. (*Id.* at 6.)

Upon learning of the relevant information from DeBottis, the prosecutor charged Plaintiff with retail fraud via aiding and abetting Green. (Br. at 3.) At trial, Plaintiff's attorney moved for a directed verdict at the close of the prosecutor's case-in-chief on the following grounds: 1) there was no evidence of the quantity and value of the items stolen; 2) there was no evidence of Green's conviction; and 3) no reasonable juror could "find that a crime was actually committed." (Br. at 3; 6/26/2003 Trial Tr. at 81-82, Ex. 3 .) The trial judge denied the motion, reasoning, in pertinent part, as follows:

> . . . [T]here is evidence . . . from the testimony of Mr. Floeter that . . . he observed the two young ladies removing items from the shelf and then subsequently removing wrappers in another section of the store.

(Trial Tr. at 84, Ex. 3.)  The jury subsequently found Plaintiff not guilty of the charge. (Br. at 3.)

On December 22, 2004, Plaintiff filed suit against VG, Bigham, Floeter, Bay, and DeBottis (collectively "Defendants") based upon her detention, custodial arrest, and subsequent prosecution. (Compl. at ¶ 7.)  Count I alleges that Defendants falsely arrested/imprisoned Plaintiff in violation of Michigan law by detaining, arresting, and imprisoning Plaintiff without the requisite legal basis.  (*Id.* at ¶¶ 25-30.)  Count II alleges that Defendants assaulted and battered Plaintiff in violation of Michigan law by subjecting Plaintiff to "unwanted physical contact" or threatening Plaintiff with such contact without the requisite legal basis.  (*Id.* at ¶¶ 31-34.)  Count III alleges that Defendants intentionally inflicted emotional distress upon Plaintiff in violation of Michigan law.  (*Id.* at 35-38.)  Count IV alleges that Defendants maliciously prosecuted Plaintiff in violation of Michigan law by criminally prosecuting Plaintiff without probable cause to believe that such prosecution could succeed.  (*Id.* at ¶¶ 39-45.)  Count V alleges that Defendants, in their individual and official capacities, seized Plaintiff in violation of the Fourth Amendment to the United States Constitution, as actionable via 42 U.S.C. § 1983.[1] (*Id.* at ¶¶ 46-51; caption.)

All of these claims turn upon Plaintiff's allegations, as set forth in her complaint, that she neither attempted to steal any items from VG nor had any knowledge of Green's attempt to do so and that, consequently, there was no reason to believe that she had committed or was committing

---

[1] The Eleventh Amendment bars any claims against state officials in their official capacity for damages, as here, rather than for injunctive or declaratory relief.  *Dugan v. Brooks,* 818 F.2d 513, 515 n.2 (6th Cir. 1987).

any offense. (*Id.* at ¶¶ 12, 18.) Plaintiff's complaint alleges that both she and Green "stated that Plaintiff did not steal any items, . . . assist in the theft, and had no knowledge that any theft had occurred." (*Id.* at ¶ 22.)

On March 14, 2005, Defendant DeBottis filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, for summary judgment under Federal Rule of Civil Procedure 56(c).[2]  In that motion, DeBottis chiefly seeks the summary dismissal of Plaintiff's § 1983, false arrest/imprisonment, assault and battery, and malicious prosecution claims against her on the ground that Plaintiff, as a matter of law, cannot establish the requisite lack of probable cause to sustain such claims. (Mot. at 2.)  DeBottis also seeks the summary dismissal of Plaintiff's claim of intentional infliction of emotional distress ("IIED") on the ground that Plaintiff's complaint fails to plead the requisite extreme and outrageous conduct to sustain such a claim.  (Br. at 9; Reply at 3.)

On April 22, 2005, Defendants VG, Bigham, Bay, and Floeter concurred in DeBottis' motion to the extent that its arguments apply to them.  Plaintiff has not responded to this concurrence, which was filed after Plaintiff responded to DeBottis' motion.  In any event, on July 20, 2005, Defendants VG, Bigham, Bay, and Floeter filed their own motion for summary judgment on all of Plaintiff's claims.

## II. ANALYSIS

Federal Rule of Civil Procedure 12(b)(6)  permits a party to raise as a defense to a claim

---

[2]DeBottis' motion also sought a protective order staying discovery pending the Court's resolution of her motion.  (Mot. at 2.)  However, as DeBottis acknowledged at oral argument, any such stay is moot since, pursuant to the Court's February 8, 2005, scheduling order, discovery concluded on June 8, 2005.

for relief in a pleading the opposing party's failure to state a claim upon which relief can be granted. Rule 12(b)(6) is designed to test whether, as a matter of law, a plaintiff is entitled to legal relief. *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987). Before dismissing a complaint for failure to state a claim upon which relief can be granted, a court must conclude "beyond [a] doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true. *Columbia Natural Resources Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Thus, a court may not grant a Rule 12(b)(6) motion based upon its disbelief of a complaint's factual allegations. *Id.* A court, however, need not accept as true conclusions of law or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Rule 12(b) provides:

> If, on a motion asserting the defense . . . [of] failure to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A "genuine" issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In deciding a motion for summary judgment, the Court must draw all justifiable inferences from the evidence in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.

### A. § 1983 Claims

To state a claim under 42 U.S.C. § 1983 against a defendant in his individual capacity, the plaintiff must show that: 1) the defendant; 2) acted under color of state law; and 3) deprived him of a federal right. *Sperle v. Mich. Dep't of Corrections,* 297 F.3d 483, 490 (6th Cir. 2002).

#### 1. Collateral Estoppel

DeBottis contends that Plaintiff's complaint fails to state any claims based upon a lack of probable cause for which relief may be granted and, thus, that such claims are subject to dismissal under Rule 12(b)(6). (Reply at 3.) Specifically, DeBottis asserts that, because the state trial court denied Plaintiff's motion for a directed verdict of acquittal in her criminal case, the doctrine of collateral estoppel precludes Plaintiff from contending that her arrest lacked the requisite probable cause. (Br. at 4.) DeBottis requests the Court to take judicial notice of the state trial court's denial of Plaintiff's directed-verdict motion as a matter of public record so that DeBottis' motion to dismiss will not be converted into a motion for summary judgment. (Reply

at 3.)  *See* Fed. R. Evid. 201(e); *Thomas v. Westchester County Health Care Corp.,* 232 F. Supp. 2d 273, 275 (S.D. N.Y. 2002).

In determining whether a state court's adjudication of an issue has preclusive effect for purposes of an action under 42 U.S.C. § 1983, the Court must apply the collateral-estoppel law of that state.  *Darrah v. City of Oak Park,* 255 F.3d 301, 311 (6th Cir. 2001).  "Under Michigan law, issue preclusion applies when 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding."  *Id.* (citing *People v. Gates,* 434 Mich. 146 (1990)).

DeBottis concedes that neither any Michigan courts nor any federal courts within this Circuit have squarely held that a trial court's denial of a directed verdict in a criminal case collaterally estopps a civil plaintiff from contending that her arrest lacked the requisite probable cause. (Br. at 4.)  DeBottis, however, relies upon *Coogan v. City of Wixom,* 820 F.2d 170, 175 (6th Cir. 1987), and *Monroe v. Sigler,* 256 Ga. 759 (1987), for analogous support.

In *Coogan v. City of Wixom,* the United States Court of Appeals for the Sixth Circuit held that, "where the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action."  820 F.2d at 175.  The Court found that the plaintiff's malicious-prosecution claim via § 1983 failed as a matter of law because the earlier state-court findings of probable cause to sustain his criminal prosecution collaterally estopped him from asserting that his prosecution was

without probable cause. *Id.*; *see Smith v. Thornburg,* 136 F.3d 1070, 1077 (6th Cir. 1998) (relying upon *Coogan* to hold that the earlier state-court finding of probable cause to sustain a criminal prosecution collaterally estopped the plaintiff from re-litigating that issue in his malicious-prosecution claim via § 1983).

In *Monroe v. Sigler,* the Georgia Supreme Court held that, "when the trial judge rules that evidence is sufficient as a matter of law to support a conviction (that is, sufficient to enable a rational trier of fact to find each and every element of guilt of the accused beyond a reasonable doubt), . . . such a holding, unreversed and in the absence of fraud and corruption, should . . . suffice as to the existence of probable cause" for purposes of collaterally estopping a subsequent § 1983 action for malicious prosecution. 256 Ga. 759, 761 (1987) (emphasis omitted).

Following *Coogan* and *Monroe*, DeBottis contends that, based upon the state trial court's denial of a directed verdict of acquittal at her criminal trial, Plaintiff is collaterally estopped from raising the probable-cause issue in the instant civil action. (Br. at 5.) In support, DeBottis notes that, with criminal misdemeanor charges, the state district court does not conduct a preliminary examination; rather, the criminal defendant may simply move for a directed verdict challenging the prosecutor's case-in-chief. (*Id.*) According to DeBottis, Plaintiff had a more ample opportunity to litigate the probable-cause issue via the motion for directed verdict, than via a preliminary examination. (Reply at 2.)

As noted above, for collateral estoppel under Michigan law to apply, the same issue must have been actually litigated and determined in the first proceeding. *Darrah,* 255 F.3d at 311. Thus, DeBottis' reliance upon the state court's denial of a directed verdict of acquittal to bar Plaintiff from arguing, in the instant case, that her arrest lacked the requisite probable cause is

10

misplaced. The state court's determination that, based upon the prosecutor's case-in-chief, a reasonable jury could find Plaintiff guilty of retail fraud is not a determination that the facts and circumstances within DeBottis' knowledge at the time of Plaintiff's arrest would warrant a reasonable person in believing that Plaintiff committed retail fraud. In her directed-verdict motion, Plaintiff never argued that her arrest for retail fraud was unlawful. *See* 6/26/2003 Trial Tr. at 81-82, Ex. 3. Thus, Plaintiff is not collaterally estopped from arguing that her arrest was without probable cause. In any event, as discussed below, the requisite probable cause existed to sustain Plaintiff's arrest as a matter of law.

### 2. Probable Cause

DeBottis argues that Plaintiff, as a matter of law, cannot show an absence of probable cause for her arrest. (Br. at 4, 7.) Plaintiff contends otherwise. (Resp. at 2.)

The Fourth Amendment "permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 36 (1979). "Probable cause" justifying an arrest exists where the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the suspect has committed, is committing, or is about to commit an offense." *Id.* at 37. "The validity of an arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Id.* at 36. Moreover, "[i]n determining whether probable cause to arrest exists, the knowledge of the arresting officers, not the suspect, is determinative." *Smith v. Thornburg,* 136 F.3d 1070, 1077 (6th Cir. 1998).

Under Michigan law, retail fraud constitutes "a larceny of merchandise for sale in a store open to the public." *People v. Randolph,* 446 Mich. 532, 551 n.23 (2002); *see* M.C.L. 750.356(5) (rendering a misdemeanor the theft of property valued at less than $200). M.C.L.A. 767.39 provides:

> Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he has directly committed such offense.

As the Michigan Court of Appeals has held, a defendant is guilty of aiding and abetting in the commission of a crime where: 1) either the defendant or some other person committed the crime charged; 2) "the defendant performed acts or gave encouragement . . . [that] aided and assisted in the commission of the crime"; and 3) "the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time of giving aid or encouragement." *People v. Acosta,* 153 Mich. App. 504, 512 (1986).

As noted above, Plaintiff's claims turn upon her allegations that she neither attempted to steal any items from VG nor had any knowledge of Green's attempt to do so and that, consequently, there was no reason to believe that she had committed or was committing any offense. (Compl. at ¶¶ 12, 18.) In the instant motion, however, DeBottis argues that, even if she believed that Plaintiff personally did not take any items off of the shelves or hide them on her person, a reasonable officer in DeBottis' position would have believed that Plaintiff had aided and abetted Green in the retail fraud by shielding the activity and by failing to report the fraud when proceeding through the check-out lane. (Br. at 7.)

Plaintiff, in response, asserts that a reasonable jury could conclude that Plaintiff's arrest was without probable cause. (Resp. at 1, 3.) Plaintiff underscores that DeBottis' police report

12

states that: 1) Bigham told DeBottis that she "did not observe the items being stolen" (DeBottis Report at 2, Ex. A); 2) Floeter advised DeBottis that he observed "at least one of the two girls . . . place[] something in her pocket" (*Id.* at 3.); 3) Bay told DeBottis that "she did not see the two females 'take the items'" (*Id.*); 4) Plaintiff stated that she did not steal anything, and no stolen items were recovered from her person (*Id.* at 4.); and 5) Green stated that she had stolen all of the items, which were recovered from her person (*Id.* at 5.).  (Resp. at 1.)  Plaintiff asserts that witnesses' testimony demonstrates that there was no probable cause to arrest Plaintiff, and that DeBottis ignored such exculpatory evidence. (Br. at 6.)

Yet, even viewing the facts in the light most favorable to Plaintiff, no reasonable juror could conclude that Plaintiff's arrest for retail fraud lacked the requisite probable cause.  Before Plaintiff's arrest, Floeter told DeBottis that he observed Plaintiff and Green "hanging around" the cosmetics' section, "looking suspiciously around them."  (DeBottis Report at 3.)  Upon interviewing Bay, DeBottis learned from Bay that, although Bay did not see Plaintiff or Green initially take any items, she later observed Plaintiff attempt to shield Green as Green unwrapped and concealed the items. (DeBottis Report at 3; Br. at 6.)  Bigham advised DeBottis that, upon being confronted, Plaintiff and Green immediately began to cry, and Green took a couple of the items out of her pockets. (DeBottis Report at 2; Br. at 6-7.)  Thus, as a matter of law, the facts and circumstances within DeBottis' knowledge would warrant a reasonable person in believing that Plaintiff knew that Green intended to commit retail fraud and that Plaintiff, nevertheless, aided and abetted Green in the commission of such fraud.  As DeBottis underscores, probable cause to arrest Plaintiff for retail fraud, under an aiding and abetting theory, existed even if Plaintiff did not personally steal anything from VG. (Br. at 7.)

### 3.  Qualified Immunity

DeBottis contend, in the alternative, that she is entitled to qualified immunity on Plaintiff's § 1983 claim against her as a matter of law. (Br. at 8.)  Plaintiff contends otherwise. (Resp. at 4.)

The doctrine of qualified immunity affords "not a defense to liability," but, rather, "an immunity from suit altogether . . . to avoid [the] burdens of [the] costs of trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  Under the qualified-immunity doctrine, government officials performing discretionary functions are not liable for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In determining whether a government official is entitled to qualified immunity, a court must first determine whether the facts alleged, when viewed in the light most favorable to the party asserting the injury, show that the public official's conduct violated a constitutional right, and, if so, whether that right was so clearly established that a reasonable official would understand that his particular conduct would violate that right.  *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  A government official is entitled to qualified immunity where he "acted under the objectively reasonable belief that his or her actions were lawful."  *Ahlers v. Schebil,* 188 F.3d 365, 373 (6th Cir. 1999) (citing *Harlow*, 457 U.S. at 815-19.)

As discussed above, the record evidence, even when viewed in Plaintiff's favor, fails, as a matter of law, to establish that DeBottis arrested Plaintiff in violation of her Fourth Amendment rights. (Br. at 8; *but see* Resp. at 4.)  Moreover, even if Plaintiff's Fourth Amendment rights were, in fact, violated, it, nevertheless, would have been objectively

reasonable to believe that Plaintiff's arrest for aiding and abetting Green's retail fraud was lawful. (*See* Reply at 5.) DeBottis is entitled to qualified immunity for Plaintiff's arrest.

Plaintiff argued that an award of summary judgment against her would be premature because, at the time of her response, she had not had an adequate opportunity to conduct discovery. *Vance v. United States,* 90 F.3d 1145, 1148 (6th Cir. 1994). (Br. at 6.) Pursuant to the Court's February 8, 2005, scheduling order, discovery concluded on June 8, 2005. Discharging its duty under Rule 12(b), the Court, at oral argument, granted Plaintiff leave to submit evidence to substantiate her claims. On July 21, 2005, Plaintiff submitted a brief on the matter. However, the evidence that Plaintiff designated for the Court's review has absolutely no bearing on the facts and circumstances within DeBottis' knowledge at the time of Plaintiff's arrest. The Court, therefore, dismisses Plaintiff's § 1983 claim based upon DeBottis' allegedly unlawful arrest of Plaintiff.

### B. State-Law Claims

#### 1. IIED Claims

DeBottis contends that Plaintiff's claims of intentional infliction of emotional distress ("IIED") fail as a matter of law. (Br. at 1.) Plaintiff contends otherwise. (Resp. at 5.)

While the Michigan Supreme court has yet to recognize formally a claim of IIED, it has described the elements that would be necessary to establish such a claim. *Roberts v. Auto Owners Ins. Co.,* 422 Mich. 594, 697, 603 (Mich. 1985). Specifically, a plaintiff would have to demonstrate: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. *Id.* at 602. As to the requisite extreme and outrageous conduct, the Court has adopted the following standard, as set forth in Restatement, Torts, 2d § 46, Comment

D:

> . . . [T]he conduct . . . [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, leaving him to exclaim, 'outrageous.'

*Id.* at 603.

DeBottis argues that Plaintiff has failed to establish the requisite extreme or outrageous conduct. (Br. at 9; Reply at 3.) Plaintiff, in turn, asserts that DeBottis' alleged arrest of Plaintiff without the requisite probable cause and Plaintiff's prosecution "based upon the false and misleading statements" in DeBottis' police report[3] rose to the level of extreme and outrageous. (Br. at 5.)

As discussed above, the record evidence, even when viewed in Plaintiff's favor, fails, as a matter of law, to demonstrate that Plaintiff's arrest was unlawful. Moreover, the record evidence that DeBottis designated for the Court's review, even when viewed in Plaintiff's favor, demonstrates, as a matter of law, that there was probable cause to prosecute Plaintiff for retail fraud, via aiding and abetting Green, regardless of any false or misleading statements in DeBottis' police report. *Cf. Darrah v. City of Oak Park,* 255 F.3d 301, 312 (6th Cir. 2001) (holding that, "if this [C]ourt finds that there was probable cause to prosecute . . . [the plaintiff],

---

[3]Presumably, Plaintiff is referring to those portions of DeBottis' police report that suggest that Plaintiff directly committed retail fraud. For example, the report states that Bigham informed DeBottis that she confronted Plaintiff and Green after Floeter observed "them" remove several cosmetic items from the shelves and place them into "their" pockets. (DeBottis Report at 2, Ex. A.) However, as the report subsequently clarifies, Floeter directly informed DeBottis that he only observed "at least one of the two girls . . . place[] something in her pocket." (DeBottis Report at 3; Br. at 6.)

16

regardless of any alleged false statements made by . . . [the arresting officer], then she cannot make out a malicious prosecution claim under the Fourth Amendment"). In her written statement following her arrest, Plaintiff stated:

> . . . She told me to help her. But I refuse[d] because I was scared so I said no Then she said grab this wrapper from me. I did, then gave it back to her cuz I got scared. Then she told me to move a candle and she then stuffed it behind. . . . Then I foll[ow]ed her as she walked towards the front of the building. Then she again asked me 'is it noticeable' I looked and said no but I know we will get caught because of the way we are both acting. . . . And we went through the check-out line and bought my candle. We walked close to the door and the Assistant Store Manager approached us and told us that there was [an] empty shaver box that was found by one of her employees and then Cassie looked at me . . . . Cassie told the lady that she did take that and a few other things from the store as well. We began to cry and we told the lady that [it] would never happen again. But she had already called 911 . . . .

(Pl. Statement, Ex. 2) Plaintiff's own written statement, as a matter of law, would warrant a reasonable person in believing that Plaintiff knew that Green intended to commit retail fraud and that Plaintiff still aided and abetted Green in the commission of such fraud by grabbing a wrapper, moving a candle, advising Green that the hidden items on her person were not noticeable, and by failing to report the fraud when proceeding through the check-out lane.

Alternatively, following *Coogan,* 820 F.2d at 175, and *Monroe,* 256 Ga. 759, Plaintiff is collaterally estopped from arguing, in this action, that her prosecution for retail fraud lacked the requisite probable cause. In denying Plaintiff's motion for a directed verdict of acquittal, the state court necessarily determined that sufficient probable cause existed to sustain Plaintiff's prosecution for retail fraud. Because Plaintiff has failed, as a matter of law, to demonstrate that her arrest or prosecution for retail fraud lacked the requisite probable cause, Plaintiff has failed to demonstrate conduct that rises to the level of extreme and outrageous for purposes of surviving summary judgment. *See Young v. Barker,* 158 Mich. App. 709, 720-22 (1987)

(affirming a directed verdict on the plaintiff's IIED claim against her arresting officer due to a lack of "extreme and outrageous" conduct after finding that Plaintiff failed, as a matter of law, to establish that her arrest and prosecution lacked probable cause).

### 2. Other Claims

DeBottis maintains that, because Plaintiff, as a matter of law, cannot establish an absence of the requisite probable cause for her arrest and prosecution, as discussed above, Plaintiff's claims of false arrest/imprisonment, malicious prosecution, and assault and battery necessarily fail. (Br. at 1, 4.)

Under Michigan law, claims of false arrest/imprisonment and malicious prosecution require, among other elements, an absence of probable cause. *Burns v. Olde Discount Corp.,* 212 Mich. App. 576, 581 (1995). As discussed above, the record evidence, even when viewed in the light most favorable to Plaintiff, fails, as a matter of law, to demonstrate that Plaintiff's arrest or prosecution lacked the requisite probable cause. Moreover, under Michigan law, "an arresting officer may use such force as is reasonably necessary to effect a lawful arrest." *Young,* 158 Mich. App. at 723. Thus, where, as here, a claim of assault and battery merely turns upon the threat of touching or touching, respectively, that necessarily accompanies a lawful arrest and detention, such a claim necessarily fails. *See id.* Consequently, Plaintiff's state-law claims of false arrest/imprisonment, malicious prosecution, and assault and battery fail as a matter of law.

### III.  SUMMARY

For the preceding reasons, the Court GRANTS DeBottis' motion for summary judgment on all of Plaintiff's claims against her.

SO ORDERED.

                                                                      s/Paul D. Borman  
                                                                      PAUL D. BORMAN  
                                                                      UNITED STATES DISTRICT JUDGE

Dated:  July 26, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 26, 2005.

                                                                      s/Jonie Parker  
                                                                      Case Manager